No. 37,938

FEDERAL DEPOSIT INSURANCE CORPORATION, *Appellee*, v. H. J. CLOONAN, *Appellant*.

(222 P. 2d 533)

Opinion filed October 7, 1950.

*Elmer W. Columbia,* of Parsons, argued the cause, and *John B. Markham* and *Herman W. Smith, Jr.,* both of Parsons, were with him on the briefs for the appellant.

*A. L. Foster,* of Parsons, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: Two replevin actions were consolidated for trial in the district court. They were instituted by the Federal Deposit Insurance Corporation against H. J. Cloonan and Helen M. Cloonan, his wife, on two chattel mortgage notes and to obtain possession of the chattels pledged as security. The action against Helen M. Cloonan was dismissed. The jury answered special questions, rendered a general verdict for plaintiff giving plaintiff possession of the chattels which secured the smaller note and a money judgment for the balance due on the larger note. Cloonan appeals.

On a former appeal of the same case we reversed the judgment against appellant and by reason of trial errors remanded the case for retrial. (*Federal Deposit Ins. Corp. v. Cloonan,* 165 Kan. 68, 193 P. 2d 656.) The pleadings are set forth at length in our former opinion, are made a part hereof and will not be restated.

The pleadings clearly set forth the capacity in which appellee instituted the actions, appellant's defenses and appellee's reply thereto. The substance of appellant's defenses was (1) the subject notes were not delivered to the failed Exchange State Bank of Parsons by appellant and when appellee acquired them on the closing of the bank it obtained no better title than the failed bank had; and (2) appellant had fully paid the failed bank all obligations he owed it notwithstanding that neither the three old notes nor the two subject renewal notes in the same total amount reflected their payment. Appellee's reply, in substance, alleged: The renewal notes had been delivered to the failed bank; if the renewal notes were conditionally delivered the conditions were unknown to appellee; appellant had waived any conditional delivery and was estopped to assert it; the notes had not been paid.

Touching appellant's first defense the undisputed testimony discloses: The bank was declared insolvent June 21, 1941; at that time the failed bank had possession of three old notes of the appellant in the total sum of $11,850 although the old notes were not then listed as assets of the bank; none of these three old notes was due before the bank closed; only one of them, a $4,000 note, was secured; when

the bank closed there were listed among the bank's assets the two new subject notes in the same total sum as the old notes with separate chattel mortgages securing each of them.

With respect to the circumstances under which the renewal notes, the subject of this litigation, were executed appellant, in substance, testified: On or about June 1, 1941, the cashier of the failed bank advised him appellee's agent was examining the Exchange State Bank for the purpose of determining whether it was solvent; the bank was in hard straits and unless it could obtain additional assets in the form of security on its loans to appellant and some other customers the bank would be closed; appellant advised the cashier he did not know why he should pledge additional security for the old notes if the bank was in danger of being closed; that if he pledged such security and the bank was closed he would have no security for a line of credit elsewhere; that the bank's records were wrong and that he, in fact, did not owe the bank; the cashier advised him if the bank closed, he, appellant, could not hope to establish his alleged claims against the bank, that the old notes did not show they were paid; the cashier advised the thing for him to do was to make the renewal notes and to secure each of them and if he did so the renewal notes would not be put into the bank unless the bank were kept open as a going concern and if the bank were kept open appellant could then assert his claim of payment; appellant took the matter under advisement, discussed it with his wife and upon further assurance from the cashier that the notes would be handled just as he had agreed, appellant and his wife signed the two notes undated and gave them to the cashier.

The testimony of the cashier, appellant's witness, corroborated that agreement. The cashier also testified he dated the notes on June 9, made them payable within thirty days thereafter, the same as the old ones had been, and placed them in the assets of the bank on June 14, 1941. The special findings of the jury were:

"1. Were the notes and chattel mortgages undated at the time they were left with Deb Smith? A. Yes.

"2. Were the notes and chattel mortgages dated and placed in the assets of the bank without the knowledge of H. J. Cloonan? A. Yes.

"3. On what date were the dates inserted in said notes and chattel mortgages by Deb Smith? A. June 9, 1941.

"4. On what date did Deb Smith place the notes and chattel mortgages in the assets of the bank? A. June 14, 1941.

"5. Were the notes and chattel mortgages left with Deb Smith with the

understanding that they were to be dated and placed in the assets of the bank only in the event that the bank was kept open? A. Yes.

"6. After the notes and chattel mortgages were signed by H. J. Cloonan, where were they kept until they were dated and placed in the assets of the bank? A. Were left in custody of Deb Smith.

"7. Do you find that on May 16, 1941, H. J. Cloonan gave his check for $2505.00 to the bank and directed Harold Reece, officer of the bank, to apply $2500.00 thereof on the $6900.00 note? A. No.

"8. Do you find that on May 17, 1941, H. J. Cloonan gave his check for $4,000.00 to the bank and directed Harold Reece, officer of the bank, to apply the same on his $6900.00 note? A. No.

"9. Do you find that on May 20, 1941, H. J. Cloonan gave his check for $3207.00 to said bank and directed Harold Reece, officer of the bank, to apply the same on his $4,000.00 note? A. No.

"10. If you find for the plaintiff, in Case No. 5439, please state the amount you allow by way of principal, and by way of interest, as follows:

"Principal: ........................................ $5468.18
"Interest: ........................................ $2650.96
"Total: ........................................ $8119.14"

Appellant contends answers one to six inclusive establish non-delivery of the notes and the general verdict cannot stand. It will be observed the jury was not asked to find whether appellant was later advised the cashier had placed the subject notes among the assets of the bank and if so what appellant did concerning that fact. Appellant testified the old notes had not been returned to him and he did not know the subject notes had been placed among the bank's assets until after the bank was closed. With respect to this last statement the testimony of the cashier, appellant's witness, differed from that of appellant. The cashier admitted he had not returned the old notes to appellant but testified he had informed appellant on June 14, two or three days thereafter, or at least before the bank closed, that he had placed the notes among the assets of the bank on June 14. On that particular point appellee contends the jury had a right to believe appellant's witness and conclude appellant was advised the renewal notes had been placed among the bank's assets before the bank closed. That contention, of course, is sound. By its general verdict in favor of appellee every controverted fact, not expressly found by the jury, and every favorable inference therefrom, were resolved in favor of appellee. (*Fisher v. Central Surety & Ins. Corp.*, 149 Kan. 38, 44, 86 P. 2d 583.)

In view of the general verdict this court must, therefore, proceed on the theory the jury believed appellant knew the renewal notes

had been placed among the bank's assets before the bank closed and hence prior to appellee's acquisition thereof.

Appellee emphasizes the fact the record discloses it had no notice of the conditional delivery agreement between appellant and the cashier. There was evidence to support that contention and no positive evidence to the contrary. Appellee asks us to recede from our former holding in this case that it was not a holder in due course. The request is based primarily on *D'oench, Duhme & Co. v. F. D. I. C.*, 315 U. S. 447, 86 L. ed. 956, 62 S. Ct. 676, and *Deitrick v. Greaney*, 309 U. S. 190, 84 L. ed. 694, 60 S. Ct. 480, not cited by appellee in the former appeal and on testimony not presented in the former appeal, namely, the written contract under which appellee purchased the subject notes and other paper from the failed bank and in which contract that bank warranted the title and validity of the subject notes, warranted the paper was genuine and that it had no knowledge of any fact which would impair the validity of the instruments and that the balance due thereon was as represented by such instruments.

Our former decision, of course, was based on the facts presented in that record. We have examined the cases now relied on by appellee but do not deem it necessary to determine whether those decisions, in the light of the particular facts therein contained, are decisive under the facts in the instant case.

Under a well established rule this court has refused to reopen and reconsider what was decided in an earlier appeal in the same case. (*Lechleitner v. Cummings*, 160 Kan. 453, 456, 163 P. 2d 423, and cases therein cited.) In any event we prefer to determine whether under the evidence presented in the last trial the jury was justified in concluding appellant waived the conditional delivery of the subject notes. If appellant waived the conditional delivery the failed bank itself could have recovered on the notes, assuming, of course, appellant failed to establish his defense of payment. As previously indicated the jury found the notes were delivered conditionally but nevertheless rendered a general verdict against appellant.

Did the evidence adduced in the last trial and inferences reasonably to be drawn therefrom support the conclusion appellant ratified the cashier's conduct in placing the subject notes among the bank's assets and thereby waived the defense of conditional delivery?

It will be recalled the cashier dated the renewal notes on June 9. They were made payable July 9, 1941. On June 9 appellant was in

the bank in conference with the examining officcers. There was testimony he then admitted he owed the bank $11,850 and that he said he would pay the notes if given time to do so. That amount was his loan limit. It was the total of the three old notes as well as the total amount of the two subject renewal notes. We cannot, however, say he acknowledged the new notes on that date. In the conversation the three old notes were discussed and designated by their respective amounts. Touching the question of his indebtedness, however, it should be recalled the jury expressly found appellant did not on the previous dates of May 16, 17 and 20 direct Reece to apply the checks designated in findings seven, eight and nine on the three old notes. We must, therefore, proceed on the theory the jury was justified in believing appellant on June 9 acknowledged owing the bank $11,850 as represented by notes. Appellant did not on that date or any other date inform the examiners of any agreement he had with the cashier concerning the conditional delivery of the new notes.

The new notes were placed among the bank's assets June 14. As previously stated appellant's witness, the cashier, testified he had notified appellant on June 14, two or three days thereafter, or at least before the bank closed that the notes had been placed among the bank's assets on June 14. On June 14 the larger one of the two renewal notes in the sum of $9,350 was credited with two payments of $200 each. On June 17 another credit of $200 was recorded on the same note. The bank was closed June 21 and on that date appellee acquired the subject paper. Thereafter and between June 21 and August 23, 1941, inclusive, appellant made twelve payments in the total sum of $2,855 which were all credited on the $9,350 note. At least some of the receipts for such payments were delivered directly to appellant by the liquidator. Such receipts showed the payments were credited on the renewal $9,350 note. It was not until the latter part of July that appellant advised the liquidator he had some claims against the bank. After so advising the liquidator appellant made seven of the above mentioned payments in August, 1941. There was evidence appellant told the liquidator he owed the subject renewal notes and would pay them if appellee would go along with him.

In the latter part of August or the early part of September appellant told the liquidator he would not make further payments as he had paid all he thought he owed the bank. Under the facts and inferences the jury reasonably might draw therefrom we would not be justified in holding there was no basis for concluding appellant had

ratified the delivery of the renewal notes and had waived the former conditional delivery.

We now reach the defense of payment. It is not our purpose or province to brand appellant or any officer of the bank with bad faith or unlawful conduct and we shall refrain from intimations in that regard. It is perfectly obvious, however, there were some glaring and unexplained irregularities in this bank. The exact nature of at least most of them is not disclosed by the instant record. We shall not deal in speculations. It is true, as appellant contends, the record discloses he made some substantial payments to the bank for some purpose, or purposes, the nature of which is not clear, for which no credit was shown on the bank's records. It cannot be said appellant's own books clearly indicate the purpose of such payments. At least some of appellant's bank transactions appear to have been had with a previous officer of the bank in May, 1941. That officer did not testify in this case. It would serve no useful purpose to attempt to narrate all the oral testimony on the subject of payment or to discuss the various records of the bank or appellant's own books on this subject.

The burden of proving payment of an obligation rests upon the person who asserts it. (*National Bank v. Hellyer*, 53 Kan. 695, 37 Pac. 130; *Bridge Co. v. Wayland*, 107 Kan. 532, 192 Pac. 752; 40 Am. Jur., Payment, § 278.) That burden was on appellant in this case whether the indebtedness be regarded as represented by the old or the renewal notes. He undertook to show he had paid most, if not all, of the old notes and also stated his reasons for thereafter executing the new ones in the same total amount of $11,850. It was the province of the jury to consider and weigh all that testimony. As previously indicated there was evidence from which the jury could conclude he acknowledged his indebtedness on the substituted new notes as well as on the old notes. Appellant did not meet the burden of proof of payment to the satisfaction of the jury. The record will not permit us to say, as a matter of law, the jury was wrong.

Appellant argues his application for a change of venue should have been sustained. We have examined the affidavits filed in support of the application and the one in opposition thereto. In view of the entire history of this and related litigation it would appear this was a case in which the application well might have been allowed. We, however, cannot say the record affirmatively discloses an abuse of judicial discretion in denying it. Absent a showing of such abuse

we will not disturb the order. (*State v. Harris,* 126 Kan. 710, 271 Pac. 316; *In re Hedrick Appeals,* 155 Kan. 165, 123 P. 2d 806, and cases therein cited.)

It is asserted the court erred in refusing to set aside special answers of the jury seven to ten inclusive, previously set forth, on the ground only appellant testified touching those subjects and that his evidence was not contradicted. It would appear the jury did not believe that testimony. The dates involved in those questions were May 16, 17 and 20. It will be recalled there was evidence appellant thereafter and on June 9 acknowledged his indebtedness on the old notes to which those special questions pertained. The jury probably considered that testimony in connection with its answers seven, eight and nine.

Appellant argues his motion for judgment *non obstante veredicto* should have been sustained. The contention is based on the theory special answers one to six inclusive disclose the renewal notes were not delivered and hence no liability thereon could attach. The contention ignores the questions of appellant's later ratification of the delivery of the renewal notes by the cashier, appellant's subsequent acknowledgment of the indebtedness represented thereby and his waiver of the original conditional delivery, all embraced in the general verdict. The special findings did not purport to cover those questions and they do not compel a general verdict contrary to the one rendered. The motion was properly overruled.

Appellant contends there was error in the exclusion and admission of evidence. We have examined the testimony involved under each of the contentions. We need not in this case discuss the original competency of appellant's own bookkeeping records to show payments on the old or subject notes. However, in view of some of appellee's testimony which was received on that subject it would seem the court should have permitted appellant's witness, Stevenson, to testify what, in his opinion, appellant's records did not disclose with respect to a $4,700 item. Upon full examination of the entire record we do not, however, regard that or other alleged errors with respect to admission or exclusion of evidence of sufficient importance to justify a reversal of the judgment.

Appellant complains concerning instructions given and the refusal to give certain requested instructions. We do not deem it necessary to treat the numerous instructions separately. Appellant's principal complaint revolves about the question whether appellee

was a holder in due course. In view of what previously has been said herein on that subject it is clear it was not necessary, under the evidence in this case, that appellee should be a holder in due course in order to prevail. In the trial appellant was permitted to adduce evidence in support of all defenses he could have presented against the failed bank itself had it been the plaintiff. He was permitted to show the conditional delivery of the renewal notes. The jury made findings on that subject. Moreover, appellant was permitted to prove payment of his entire indebtedness to the failed bank irrespective of whether it was represented by the old or the renewal notes. In this he failed. In view of those facts we think we would not be justified in reversing the judgment for technical errors which do not affirmatively appear to have prejudiced appellant's substantial rights.

The judgment is affirmed.

HARVEY, C. J., dissents.