No. 62,207

DOROTHY BARBER, *Appellant*, v. SYLVIA LANG WILLIAMS a/k/a Unknown aliases, LAURA LINDA WILLIAMS a/k/a LAURA LANG a/k/a Unknown aliases, and CITY OF TOPEKA, *Appellees*.

(767 P.2d 1284)

Opinion filed January 20, 1989.

*Alan V. Johnson*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, argued the cause, and *W. Thomas Stratton* and *Martha A. Peterson*, of the same firm, were on the briefs for the appellant.

*J. Steven Pigg*, of Fisher, Patterson, Sayler & Smith, of Topeka, argued the cause and was on the brief for the appellee City of Topeka.

The opinion of the court was delivered by

MILLER, C.J.: The plaintiff, Dorothy Barber, brought this action for damages against Sylvia and Laura Williams. Plaintiff later amended her petition, naming the City of Topeka as an additional defendant. Judgment has been entered for plaintiff and against Sylvia and Laura Williams. That judgment is final, and neither Sylvia nor Laura are parties to this appeal. Plaintiff claims that her damages were caused by the City's negligence in licensing a fortunetelling business operated by the Williamses. The trial court entered summary judgment on plaintiff's claims against the City of Topeka, and she appeals.

It will be helpful to first state some of the rules relating to summary judgment. In *Meyers v. Grubaugh*, 242 Kan. 716, 717-18, 750 P.2d 1031 (1988), we said:

"Summary judgment is proper if no genuine issue of fact remains, giving the benefit of all inferences which may be drawn from the admitted facts to the party against whom judgment is sought. A trial court, in ruling on motions for summary judgment, is required to search the record and determine whether issues of material fact exist. When summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *Hunt v. Dresie*, 241 Kan. 647, 652-53, 740 P.2d 1046 (1987)."

Summary judgment is useful and particularly appropriate when the facts are not disputed. As we noted in *Farmers State Bank & Trust Co. of Hays v. City of Yates Center*, 229 Kan. 330, Syl. ¶ 7, 624 P.2d 971 (1981): "Summary judgment is proper where the only question or questions presented are questions of law."
See *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, 390, 710 P.2d 1297 (1985).

The facts are not disputed. In late 1983, Sylvia Williams applied to the City of Topeka for a fortunetelling license. She submitted three letters of recommendation with her application. Detective Stevens of the Topeka Police Department was assigned the task of conducting a background check on Sylvia Williams. He ran record checks with several law enforcement agencies, including the Lawrence, Kansas, Police Department, but found no police record of anyone by that name. Detective Stevens eventually submitted a report recommending approval of Sylvia Williams' application, and the City issued a license to her. During the ensuing year, Detective Stevens learned that Laura Williams was participating in the business with her daughter Sylvia. He planned to oppose the renewal of Sylvia's license, but the license was renewed without his knowledge or recommendation.

Laura Williams, mother of Sylvia Williams, had operated a palm reading and astrology business in Lawrence. After complaints were filed against her, she returned money to the complainants and the charges were apparently dismissed. When Laura moved with her family to Topeka, the Lawrence police notified the Shawnee County Sheriff's Office and the Kansas Bureau of Investigation. Officer Crady of the Shawnee County Sheriff's Office received the information about Laura Williams. He also learned from an FBI rap sheet that Laura had pled guilty to felony theft in Duluth, Minnesota, and that she had paid

restitution in Colorado Springs. However, Detective Stevens, of the Topeka Police Department, was not aware of this information until after Sylvia's license had been issued.

Meanwhile, in February of 1984, Dorothy Barber went to see an astrologer, Sylvia Williams. Mrs. Barber continued to see Sylvia and later saw Laura Williams concerning problems with her husband. In May 1984, Dorothy Barber gave the Williamses $33,000. She was told that they were going to burn the money and bury the ashes in a cemetery to remove an evil spirit from her. In March 1985, she gave the Williamses an additional $20,000. She was told that this money would be returned to her. After she realized that she would not receive her money back, she filed suit against Sylvia and Laura Williams, and later named the City as an additional defendant. Dorothy Barber contends that the City was negligent both in issuing and in renewing Sylvia Williams' fortunetelling license, and that this negligence was the direct cause of her loss. Mrs. Barber was not aware that the City had licensed the fortunetelling business until long after she had paid the money to the Williamses.

The first and primary issue is whether the City is immune from liability under K.S.A. 1987 Supp. 75-6104(c) when it is negligent in licensing a business. The Kansas Tort Claims Act, of which 75-6104(c) is a part, exempts from liability certain governmental action. The subsection which is at issue reads:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(c) enforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, regulation, ordinance or resolution."

Under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, liability is the rule, immunity the exception. Ordinarily a strict or narrow interpretation must be applied to statutory exceptions. The burden is upon the governmental entity to establish that its actions come within the immunity provisions of the act. *Jackson v. City of Kansas City*, 235 Kan. 278, 286, 680 P.2d 877 (1984).

Plaintiff concedes that the City is not liable for damages resulting from the enforcement of or failure to enforce a law or ordinance. She argues, however, that 75-6104(c) does not protect the City from liability where it has acted *negligently* in enforcing or failing to enforce its ordinances. Put differently, her argument is that once the City undertakes the licensing of fortunetellers,

the City has a duty to act with due care, and if it does not and loss or injury results, the City is liable. The issue we must decide is whether negligence in the enforcement of an ordinance removes the action from the protection of the 75-6104(c) exception to governmental liability.

*Jackson* is the most recent case on point. There, the City of Kansas City appealed a judgment for damages which was entered against the City following a jury trial. The City contended that the failure of one of its employees to abide by a departmental regulation concerning the operation of emergency vehicles was the equivalent of the failure to enforce an ordinance or regulation, and thus liability was barred by 75-6104(c). We did not agree. Relying on *Cansler v. State*, 234 Kan. 554, 675 P.2d 57 (1984), we explained that tortious conduct outside the scope of the regulation or ordinance, which would be negligence at common law, is an actionable tort for which the government is not immune. We quoted from *Cansler*:

" 'We construe K.S.A. 1981 Supp. 75-6104(c) to provide an exemption from claimed liability only where claimant's sole asserted claim of causal negligence is the public entity's enforcement or failure to enforce a law. That section does not provide an exemption where the agency, in enforcing or failing to enforce a law, *commits some additional tortious act or omission which would be negligence at common law*, and which act or omission causes damage.' 234 Kan. at 568." (Emphasis supplied.) 235 Kan. at 285-86.

We then observed that "[o]bviously, the claim of negligence herein relative to driving at an excessive speed, driving without due regard for the safety of others, etc. would be negligence at common law." 235 Kan. at 286. As a result of that determination, we held that the negligence action was not barred by K.S.A. 1987 Supp. 75-6104(c).

In the case at hand, the trial court ruled that the City's action with regard to the ordinance did not constitute negligence at common law. Plaintiff, however, submits that there is a common-law duty to investigate and license with due care. In support of that argument, plaintiff relies on Restatement (Second) of Torts § 308 (1963):

"**Permitting Improper Persons to Use Things or Engage in Activities.** It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others."

While the forerunner of Restatement (Second) of Torts § 308 was recognized by this court in *Wroth v. McKinney*, 190 Kan. 127, 373 P.2d 216 (1962), and *Blakey v. Zirkle*, 187 Kan. 562, 358 P.2d 758 (1961), both cases are distinguishable. *Worth* concerned the negligent placement of a firearm within the reach of a child. The dangerous character of the firearm elevated the duty of care owed to a licensee. *Blakey* involved negligence in permitting a twelve-year-old to drive a motor vehicle. Section 308 was cited in that opinion, along with a long list of other authorities, in support of the conclusion that the question of appellant's simple or ordinary negligence was properly submitted and conscientiously determined by the jury. Neither case is authority for the creation of the common-law duties plaintiff seeks to have us impose upon cities, and we have found no cases imposing such a duty upon municipal corporations.

We also interpreted 75-6104(c) in *Lantz v. City of Lawrence*, 232 Kan. 492, 657 P.2d 539 (1983). *Lantz* involved a Lawrence weed abatement ordinance. City employees removed not only weeds but also trees from the Lantz property. The owners sued the city, alleging both negligence and conversion. The trial court entered summary judgment, based upon 75-6104(c). We reversed, holding summary judgment was improper since a material issue of fact remained as to whether the city employees' actions of cutting trees were within the purview of the city's ordinance. We said:

"If at trial it is determined the city employees' actions giving rise to this lawsuit were outside the purview of the ordinance, the exception contained in 75-6104(c), exempting governmental entities from liability where damage results from the enforcement of a law, is inapplicable. K.S.A. 1981 Supp. 75-6103(a) therefore would apply and the city and defendants Osborne and Demby [city employees] could be held liable if their actions are determined at trial to be negligent or wrongful.

. . . .

"We hasten to emphasize in the instant case that if the trier of fact should find, after further development of the facts upon remand to the trial court, that the trees removed by the city were indistinguishable by city employees from other weeds growing on the premises, as defined by the ordinance, and further, that the use of chain saws was necessary and proper in the removal of such weeds and overgrowth, the appellees would have acted within the purview of the weed abatement ordinance and the exception contained in 75-6104(c) would apply." 232 Kan. at 497-98.

The plaintiff in the case now before us makes no showing that

the actions of the City of Topeka were outside the scope or purview of the ordinance. In accordance with the ordinance, an investigation of the applicant was conducted. Before it issued the license, the City was not aware of the prior infractions or difficulties in which the applicant's mother was involved. It was, however, aware of those before the license was renewed, and could be considered negligent in renewing the license. However, all of the City's actions were within the scope of the ordinance. We discern no "additional tortious act or omission which would be negligence at common law."

Plaintiff also advances the argument that several federal decisions construing the Federal Tort Claims Act should control the case at hand. 28 U.S.C. § 2680 (1982) lists a number of exceptions to the permissible federal tort claims. Section 2680 reads in part:

"The provisions of this chapter and section 1346(b) of this title shall not apply to —

"(a) Any claim based upon an act or omission of an employee of the Government, *exercising due care*, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." (Emphasis added.)

While it may be argued that K.S.A. 1987 Supp. 75-6104(c) is based on 28 U.S.C. § 2680(a), we quote the following from Palmer, *A Practitioner's Guide to the Kansas Tort Claims Act*, 48 J.K.B.A. 299, 306 (1979):

"Exception (c) is taken from the Federal Tort Claims Act except that the FTCA has a provision respecting the enforcement or failure to enforce a law being done in a non-negligent manner."

Also in Note, *Governmental Liability: The Kansas Tort Claims Act [or The King Can Do Wrong]*, 19 Washburn L.J. 260, 271 (1980), the authors state:

"The Kansas exception in K.S.A. § 75-6104(c) did not adopt the exact language of the first clause of 28 U.S.C. § 2680(a). Most notably, the federal Act specifically requires the government employee to act with 'due care.' Federal courts have not allowed invocation of this exception where government employees, in the execution of laws, did not manifest 'at least some minimal concern for the rights of others.' The Kansas courts may well read a 'due care' requirement into our statute, consistent with its apparent purpose of protecting the validity of governmental laws. On the other hand, the omission of the 'due care' proviso by our legislature, in light of the federal cases stressing that language, seems to

indicate a conscious effort to enact a comparatively broader exception. Perhaps the Kansas legislature was afraid the courts would use the 'due care' requirement to unduly restrict the immunity provided by this exception. In light of the antagonism toward immunity previously displayed by the Kansas Supreme Court, this fear may be well founded."

Where the language of a statute is plain and unambiguous, this court's responsibility is to give effect to the intent of the legislature as expressed, and not to rearrange the legislature's work to express what the court thinks the law should or should not be. *Brasel v. State Board of Pharmacy*, 238 Kan. 866, 869, 714 P.2d 1387 (1986). Turning to 75-6104(c), it is clear that the legislature intentionally omitted the "due care" provision found in the federal statute. The federal decisions interpreting 28 U.S.C. § 2680(a) (1982) are therefore inapposite and we decline to rely upon them. The insertion of "due care" into the statute is not a matter for this court; it should be left to the legislature. The exception contained in our law is broader than its federal counterpart and we will apply it as enacted.

Plaintiff makes one final argument which we should discuss. In her attempt to establish negligence at common law, she submits that the City owed a special duty to protect her. She contends that this duty arises through the City's decision to license fortunetellers. She relies upon Restatement (Second) of Torts § 324A (1963) in support of this claim. That section reads:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for *physical harm* resulting from his failure to exercise reasonable care to protect his undertaking, if

  "(a) his failure to exercise reasonable care increases the risk of such harm, or

  "(b) he has undertaken to perform a duty owed by the other to the third person, or

  "(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." (Emphasis supplied.)

The trial court properly held that § 324A is inapplicable to the present action. While we have adopted § 324A, that section has application only in cases involving physical harm. See *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986); *Cansler v. State*, 234 Kan. 554; *Schmeck v. City of Shawnee*, 232 Kan. 11, 651 P.2d 585 (1982). We have found no Kansas cases applying § 324A except when physical harm resulted, and none has been cited to us. We conclude that under the facts of this case there was no common-law negligence on the part of the City.

In light of our disposition of the foregoing issues, the remaining issues briefed by the parties need not be decided.

The judgment is affirmed.